United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 9, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-30225

_____

RANDALL BROWN, ON BEHALF OF MICHAEL A. TRACY,

Plaintiff - Appellant,

v.

LIBERTY MUTUAL FIRE INSURANCE COMPANY; ET AL,

Defendants,

LIBERTY MUTUAL FIRE INSURANCE COMPANY,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Louisiana
No. 3:04-CV-00002-SCR

_____

Before JOLLY, GARZA, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:[*]

Plaintiff Randall Brown appeals from the district court's
grant of summary judgment in favor of Defendant Liberty Mutual
Fire Insurance Company ("Liberty Mutual").  Brown filed suit
against Liberty Mutual based on an assignment of rights from
Liberty Mutual's insured, Michael Tracy.  Brown claims that
Liberty Mutual failed to meet its contractual duty to act in good

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

faith in handling his claim, which arose from an automobile accident that was Tracy's fault. Brown alleges that Liberty Mutual failed to settle the claim within Tracy's policy limits and breached its duty to keep Tracy informed and defend the claim against him. Therefore, Brown claims that Liberty Mutual is liable for the amount of the excess judgment against Tracy, which includes damages, penalties, and attorney's fees under the penalty provision of Louisiana Revised Statutes §§ 22:658 and 22:1220. On appeal from the district court's grant of summary judgment in favor of Liberty Mutual, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts are largely undisputed. On February 26, 2001, Michael Tracy reported to his insurer, Defendant Liberty Mutual, that he was involved in a three-car accident three days earlier. Tracy's vehicle rear-ended a woman's vehicle that in turn hit Plaintiff Randall Brown's vehicle. Liberty Mutual assigned an investigator/adjustor to the claim. Brown hired an attorney to pursue his property damage and bodily injury claims.

On March 5, Brown's attorney advised Liberty Mutual that he was injured in the accident, without providing specific information about the injuries. On March 15, the attorney's firm sent a letter, signed by a case manager, to Liberty Mutual, requesting the amount of Tracy's policy limits and asking Liberty

Mutual to "tender your policy." In addition, the firm attached an MRI report to the letter that stated that Brown had a herniation and disc bulge, but did not state the likely cause of either.[1] Brown's attorney did not provide Liberty Mutual any other information about Brown's medical condition and denied Liberty Mutual's requests for authorization to obtain Brown's medical records. Brown had back surgery on May 25, 2001.

On June 8, 2001, Brown filed suit against Tracy and Liberty Mutual alleging that Brown suffered serious personal injuries as a result of the vehicle accident on February 23. Liberty Mutual assigned an attorney to the case who sent Tracy a letter advising him of a potential excess judgment arising in the lawsuit. The attorney later advised Tracy to notify any excess insurer of the potential exposure and counseled him to consult an attorney who specializes in asset protection. Although Liberty Mutual authorized the attorney to settle Brown's claims for the $25,000 policy limits, Brown refused. At a later date, Brown sent Liberty Mutual a settlement letter, offering to settle the claim

---

[1] The March 15 letter states in relevant part:

We have received a copy of a MRI [sic] of the clients [sic] lumbar of which we have enclosed a copy for your review and record. The results are positive for a herniation and a disc bulge . . . . We are requesting at this time due to the severity of the injuries sustained by the client in the accident that you tender your policy.

We are also requesting a confirmation of the amount of your insureds [sic] policy. Please provide this information.

for $150,000.  Liberty Mutual refused.

After holding a bench trial on March 6, 2003, the magistrate judge rendered judgment in favor of Brown against Tracy and Liberty Mutual in an amount in excess of $300,000, plus interest and court costs.  Liberty Mutual paid its policy limits, plus interest and court costs.  Thereafter, Tracy assigned all his rights against Liberty Mutual to Brown.  Brown then filed suit as Tracy's assignee against Liberty Mutual seeking recovery of the amount of the excess judgment, plus penalties and attorney's fees.

Liberty Mutual moved for summary judgment after completion of discovery, arguing that the undisputed facts do not establish a claim under Louisiana's bad faith statutes or any applicable law.  The magistrate judge granted the motion.  Brown appeals, claiming that there are genuine issues of material fact supporting his claim that Liberty Mutual failed to meet its contractual duty to act in good faith in handling the insurance claim.  Brown alleges that Liberty Mutual failed to settle the claim within Tracy's policy limit and breached its duty to keep Tracy informed and defend the claim against him.  Brown therefore claims that Liberty Mutual is liable for the amount of the excess judgment against Tracy, which includes damages, penalties, and attorney's fees under the penalty provisions of Louisiana Revised Statutes §§ 22:658 and 22:1220.  LA. REV. STAT. §§ 22:658 and

22:1220.

## II. SUMMARY JUDGMENT STANDARD

This court reviews an appeal from summary judgment <u>de novo</u>, employing the same standards as the district court. <u>See</u> <u>Urbano v. Continental Airlines, Inc.</u>, 138 F.3d 204, 205 (5th Cir. 1998). Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, the record reflects that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 255 (1986); <u>Price v. Federal Exp. Corp.</u>, 283 F.3d 715, 719 (5th Cir. 2002). Summary judgment is granted where a party fails to establish the existence of an element essential to the case and on which the party has the burden of proof. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). If the moving party carries its burden under Rule 56(c), the burden shifts so that the opposing party must direct the court's attention to specific evidence in the record that demonstrates that it can satisfy a reasonable jury that it is entitled to verdict in its favor. <u>Anderson</u>, 477 U.S. at 252. Mere scintilla of evidence will not satisfy the opposing party's burden. <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994).

### III. DISCUSSION

This court has jurisdiction to hear this case as there is complete diversity between the parties and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332.

Brown asserts that the March 15 letter requesting Tracy's insurance company to "tender your policy" amounts to an offer to settle, thereby obligating the insurance company to have kept Tracy informed of the negotiations to prevent liability for excess judgment.  Brown's claim rests upon the violation of two relevant statutes: Louisiana Revised Statutes §§ 22:658 and 22:1220.  LA. REV. STAT. §§ 22:658 and 22:1220.  These statutes set forth the liability insurer's duty to act in good faith and to deal fairly in handling claims.  However, the facts do not support Brown's claims under either of these statutes.

Section 22:120 provides in pertinent part:

A. An insurer, . . . owes to his insured a duty of good faith and fair dealing.  The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both.  Any insurer who breaches these duties shall be liable for any damages sustained as result of the breach.

B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:

(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.
(2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.
(3) Denying coverage or attempting to settle a claim on the

basis of an application which the insurer knows was altered without notice to, or knowledge or consent of, the insured.
(4) Misleading a claimant as to the applicable prescriptive period.
(5) Failing to pay the amount of any claim due to any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.

The list of acts found in subsection B, each of which constitute a breach of the insurer's duty to an insured and claimants, is exclusive. Theriot v. Midland Risk Ins. Co., 694 So.2d 184, 189 (La. 1997). Brown does not cite any facts demonstrating that Liberty Mutual breached its duty in any of the enumerated circumstances under which an insurer neglects its duties of good faith and fair dealing to its insured under subsection B.

Section 22:658(A) penalizes the arbitrary or capricious failure either to pay, inter alia, (1) a claim due the insured "within thirty days after receipt of satisfactory proofs of loss" from the insured, or (2) a third-party claim "within thirty days after written agreement of settlement." LA. REV. STAT. § 22:658(A)(1), (2). Brown does not allege any facts that support his claim under subsection A against Liberty Mutual. However, while citing to this statute, Louisiana courts have allowed an award of attorney's fees in cases where an insurer's bad faith refusal to settle led to an excess judgment. Louque v. Allstate Ins. Co., 314 F.3d 776, 781 (5th Cir. 2003); see also Maryland Cas. Co. v. Dixie Ins. Co., 622 So.2d 698, 703 (La. Ct. App. 1993).

Louisiana law obligates an insurance company to keep its insured informed of settlement negotiations to protect him from exposure to excess liability but states that determinations as to what constitutes bad faith or lack of good faith depends on the facts and circumstances of each case. Roberie v. Southern Farm Bureau Cas. Ins. Co., 194 So.2d 713, 716 (La. 1967); Lafauci v. Jenkins, 844 So.2d 19, 28 (La. Ct. App. 2003). Failure to settle a claim within the policy limits is not in itself proof of bad faith. Smith v. Audobon Ins. Co., 679 So.2d 372, 376 (La. 1996)("In the absence of bad faith, a liability insurer generally is free to settle or to litigate at its own discretion, without liability to its insured for a judgment in excess of the policy limits."); see also Commercial Union Ins. Co. v. Mission Ins. Co., 835 F.2d 587, 588 (5th Cir. 1988)("As interpreted by this court, Louisiana law only imposes liability for an excess judgment against a primary insurer if that insurer failed to accept an actual offer to settle within its policy limits and such failure was negligent, arbitrary, and/or in bad faith."). The insurer's conduct should be judged at the time at which the insurer could have and should have settled within the policy limits. See Robin v. Allstate Ins. Co., 870 So.2d 402, 409 (La. Ct. App. 2004)("[A] determination of whether an insurer's refusal to pay a claim is arbitrary and capricious, or without probable cause, hinges on the facts known by the insurer at the time a

decision to refuse to pay the claim is made.") The following six factors should be considered in determining whether an insurer acted arbitrarily or in bad faith in failing to compromise: (1) the probability of the insured's liability, (2) the adequacy of the insurer's investigation of the claim; (3) the extent of damages recoverable in excess of policy coverage; (4) the rejection of offers in settlement after trial; (5) the extent of the insured's exposure as compared to that of the insurer; and (6)the nondisclosure of relevant factors by the insured or insurer. Cousins v. State Farm Mut. Auto. Ins. Co., 294 So.2d 272, 275 (La. Ct. App. 1974). "Even if a liability insurer is not in bad faith in its evaluation of a claim or in refusing to settle a claim, it may still be found to be in bad faith for failure to keep its insured informed of the status of settlement negotiations and other developments affecting his excess exposure." Lafauci, 844 So.2d at 29.

Brown argues that the March 15 letter received by Liberty Mutual requesting it to "tender your policy" amounts to a settlement offer. In addition, Brown maintains that Liberty Mutual had adequate information through the MRI report that should have alerted it that Brown's claim might exceed the policy limits. Brown asserts that Liberty Mutual intentionally failed to inform Tracy of an offer to settle for the policy limits. If it is reasonable to infer from the phrase "tender your policy"

that a settlement offer has been made, then Liberty Mutual would have acted in bad faith in not apprising Tracy of the settlement offer.

We agree with the district court that no reasonable inference can be drawn from the March 15 letter that it was an offer to settle Brown's claims for the policy limits: the letter is from a case manager, not an attorney; the letter does not mention the words "settle" or "settlement"; the letter requested information about the policy limits. All these make it difficult to view the phrase "tender your policy" as a bona fide offer to settle Brown's claims. The shortcomings of the letter are plainly evident when we compare the March 15 letter to the content of Brown's settlement letter offering to settle his claims for $150,000: it was signed by an attorney, the word "settle" appeared in the first sentence, and it clearly set forth a settlement amount.

Brown's argument that Liberty Mutual inferred that March 15 letter was a settlement offer is unavailing. Brown points out that on March 29, 2001, Liberty Mutual's adjustor checked a box marked "yes" next to the question, "Has the claimant pressed for quick settlement?" on the initial claim assessment form. However, this is a scintilla of evidence that is not supported by the content of the March 15 letter. The initial claim assessment form does not provide any information to support the inference

that this "yes" checkmark was based on the March 15 letter.

Finally, Brown's argument that Liberty Mutual had adequate information that Brown's claims might exceed the policy limits once it received the MRI report is unpersuasive. The MRI report did not contain any information on the causation of Brown's injuries. Liberty Mutual attempted but was unable to obtain information on causation. Liberty Mutual timely appointed an attorney upon the filing of Brown's lawsuit against Tracy, and the attorney timely advised Tracy of the potential for excess liability.

## IV. CONCLUSION

Brown fails to demonstrate a genuine issue of material fact to support a finding that Liberty Mutual acted in bad faith by failing to settle for the policy limits, or to inform Tracy of the potential for excess liability or of any settlement offers that could have prevented his exposure to an excess judgment. Accordingly, we AFFIRM the district court's grant of summary judgment in favor of Liberty Mutual.